25 Cal.Rptr.3d 590 (2005)
127 Cal.App.4th 377
In re BROOKE C., a Person Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
Bridget C., Defendant and Appellant.
No. B175555.
Court of Appeal, Second District, Division Two.
February 1, 2005.
As Modified March 1, 2005.
*591 Pamela Rae Tripp for Defendant and Appellant.
Larry Cory, Assistant County Counsel, and Jerry M. Custis, Senior Deputy County Counsel, for Plaintiff and Respondent.
NOTT, Acting P.J.
In this dependency case, it is conceded that the notice requirements under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) were not met. We hold that this deficiency does not impact the jurisdictional and dispositional orders previously made in this proceeding.

BACKGROUND
Bridget C., mother of Brooke C. (born in 1998), appeals from an order denying family reunification services based upon a finding that Bridget had resisted treatment pursuant to section 361.5, subdivision (b)(13) of the Welfare and Institutions Code.[1] Bridget contends that the court erred (1) in failing to grant her reunification services, because the evidence does not show that Bridget resisted treatment and the court failed to properly consider the detriment to Brooke, and (2) in failing to ensure that the notice requirements under the (ICWA) were met.
In December 2003, Brooke's father, Robert G., notified police that while visiting Brooke, he saw Bridget showing symptoms of drug use. He found a Vicodin pill near Bridget's bed and within Brooke's reach. Officers arrived and found Bridget disoriented, lethargic, confused, and unable to speak clearly or walk straight. A social worker interviewed Bridget, and reported that she could not walk straight and had difficulty understanding what was said to her. Brooke said that Bridget had fallen out of bed, slept all the time, and acted like a zombie. Bridget told the social worker that her condition was caused by the flu.
Brooke was placed in the home of her paternal aunt, where she remained throughout the period reported in the record. The Los Angeles County Department of Children and Family Services (Department) filed a dependency petition on December 24, 2003, alleging that Bridget had a history of substance abuse and that her drug use endangered Brooke and had led to the filing of an earlier dependency case. The Department gave notice that it might seek an order denying reunification services.
In an interview, Bridget told a social worker that she believed she was of Navajo heritage, although she did not know if her family was registered. Robert said that he was of Apache heritage, and also did not know if his family was registered. In December 2003, the court ordered the Department to send notice "to the Bureau *592 of Indian Affairs and the Secretary of the Interior referencing the Navajo Nation and Apache Nation, and also do further investigation to try to determine the specific tribal counsel that might have an interest in Brooke," and to provide the court with documentation. The February social study report states without explanation that the ICWA does not apply. The April social study report states that the ICWA does or may apply, and attaches two Indian Nation letters. The letter from the Navajo Nation states: "We have been unable to verify the above child's eligibility for enrollment with the Navajo Indian Tribe based on the information you have provided." The letter from the Apache Tribe of Oklahoma states that it is only one of nine bands of federally recognized Apache Tribes, and that a search based upon the information provided reveals that neither Brooke, Robert, nor Sophie A. (presumably an ancestor) is enrolled with or eligible for enrollment with the Apache Tribe of Oklahoma.
The Department's evidence showed that Brooke had been the subject of three earlier dependency proceedings. She was born with a positive toxicology screen for an illicit drug. A voluntary family maintenance contract was signed by Bridget and Robert.
The family maintenance program failed, and Brooke was detained in January 1999. She was declared a dependent of the juvenile court based upon the drug in her system at birth and Bridget's history of abusing prescription drugs. The court ordered Bridget to participate in drug counseling, a substance abuse rehabilitation program, and random drug testing. Although she completed a parent enhancement program and a pain management program, Bridget tested positive in August 2000 for propoxyphene (Darvon). The court nevertheless terminated jurisdiction in May 2001, placing Brooke with Bridget.
In December 2002, a family maintenance program was begun for Brooke after Bridget was arrested for driving under the influence of drugs with Brooke in the car. The case was terminated in September 2003.
At the contested adjudication hearing, Bridget conceded that she had used drugs on and off for the previous 15 years. In addition to the dependency proceedings, Bridget had been convicted in October 1999 of driving under the influence of drugs, arrested in September 2001 for drug possession, and arrested in March 2002 for driving under the influence of drugs.
Bridget had enrolled in a number of drug treatment programs during the previous years. She failed to complete a four-month residential program begun in February 2003 and completed an outpatient drug abuse program in December 2003, in which she committed to being sober. Bridget testified that Brooke was detained from her in the present matter three days after she committed to being sober. Bridget tested for drugs in January 2004, and benzodiazepines were found in her system. Bridget also had participated in additional detoxification stays and a number of additional drug abuse programs. She conceded that she had in the past just "gone through the motions" of rehabilitating. In November 2001, when she was admitted to a detoxification program, she told admitting staff that she had used heroin, Soma, and Lorcet daily during the preceding three months. Robert's adult daughter stated that on at least one occasion she had provided Bridget with a urine sample at her request to use in a drug test.
The court found the following. Bridget had a history of substance abuse and tested *593 positive for drugs in January 2004; Bridget's drug use impaired her ability to care for Brooke; Brooke was a former dependent of the court owing to Bridget's and Robert's drug use; and Bridget had unresolved drug-related issues. The court found that the Department had proved the applicability of section 361.5, subdivision (b)(13), and denied Bridget reunification services. The court expressly declined to apply the exception for best interest of the child (§ 361.5, subd. (c)), stating: "Here's a child that's had to go through the system three different times. And she's what? Six years old. And that's enough. And it's not in the best interests of the child to offer reunification services to mother now. It hasn't been shown by clear and convincing evidence." The court ordered reunification services for Robert.

DISCUSSION

I. Reunification services
Section 361.5, subdivision (b)(13) provides that reunification services need not be provided to a parent or guardian who "has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention." The statute reflects "a legislative determination that an attempt to facilitate reunification between a parent and child generally is not in the minor's best interests when the parent is shown to be a chronic abuser of drugs who has resisted prior treatment for drug abuse. [Citation.] In effect, the Legislature has recognized that, under those circumstances, `it may be fruitless to provide reunification services....' [Citation.]" (In re Levi U. (2000) 78 Cal.App.4th 191, 200, 92 Cal.Rptr.2d 648.) Resistance to prior treatment for chronic use of drugs may be shown where the parent has participated in a substance abuse treatment program but continues to abuse illicit drugs. (Ibid.) On appeal, we review the record for substantial evidence. (See In re Brian M. (2000) 82 Cal.App.4th 1398, 1401, 98 Cal. Rptr.2d 881.)
Bridget does not challenge the finding that her drug use is extensive, abusive, and chronic. Nor does she dispute that she was ordered in 1999 to participate in drug counseling and substance abuse rehabilitation programs and in 2000 to participate in a first-offender's program due to her conviction for driving under the influence of drugs. Instead, she urges that her conduct during the three years preceding the filing of the petition, which occurred in December 2003, does not amount to resistance to treatment as required by section 361.5, subdivision (b)(13). We disagree.
The evidence adduced at the contested disposition hearing shows that during the relevant period, Bridget participated in several substance abuse treatment programs, but continued to abuse illicit drugs. After many years of substance abuse, she failed to complete her February 2003 drug abuse treatment program. Bridget subsequently completed an outpatient drug abuse program, but was under the influence of drugs a few days later and tested positive for an illicit drug in January 2004. The court could properly find that Bridget had engaged in more than a brief relapse, that she had instead resisted treatment.
The court was not required to apply the exception contained in section 361.5, subdivision (c), which states in relevant part: "The court may not order reunification for a parent or guardian described in paragraph [(b)(13)] unless the court finds, by clear and convincing evidence, that reunification is in the best interest *594 of the child." The court considered the detriment to Brooke if family reunification services were denied, and determined that because Brooke had been the subject of dependency proceedings three times during her six years, additional reunification services were not in her best interest. The fact that Bridget and Brooke shared a mother-daughter relationship does not require a different outcome. The court properly determined that it would be fruitless to continue to provide reunification services.

II. Notice requirements
Bridget contends that the Department failed to comply with the notice requirements of the ICWA. The Department concedes the point. We conclude that notice was not proper and shall remand for compliance.
When a dependency court has reason to know the proceeding involves an Indian child, the Department must notify the Indian child's tribe, or, if the tribe's identity or location cannot be determined, the Bureau of Indian Affairs, of the pending proceedings and of the right to intervene; and no proceeding to place the child in foster care or terminate parental rights shall be held until at least 10 days after the tribe or Bureau of Indian Affairs has received the notice. (25 U.S.C. § 1912, subd. (a); 25 C.F.R. § 23.11(c)(12) (2003).) Notice must be sent to all tribes of which a child may be a member or eligible for membership. (See In re Louis S. (2004) 117 Cal.App.4th 622, 632-633, 12 Cal.Rptr.3d 110.) The notice must include the names of the child's ancestors and other identifying information, if known, and be sent registered mail, return receipt requested. (In re Karla C. (2003) 113 Cal.App.4th 166, 175, 6 Cal.Rptr.3d 205.) When proper notice is not given, the dependency court's order is voidable. (In re Karla C., supra, 113 Cal.App.4th at p. 174, 6 Cal.Rptr.3d 205; 25 U.S.C. § 1914.)
Here, the Department was advised of possible Indian ancestry by both Bridget and Robert. The record does not reflect that notice of the proceedings was sent to the Bureau of Indian Affairs. Although responses from two tribes are in the record, it does not contain proof that known ancestors were properly identified. The record is silent on whether additional Apache tribes should have been or were notified. We conclude that the notice requirements of the ICWA were not satisfied.
The question remains whether the error requires reversal. We recognize the split of authority as to whether a violation of the ICWA constitutes jurisdictional error. We agree with the thorough analysis by the court in In re Antoinette S. (2002) 104 Cal.App.4th 1401, 129 Cal.Rptr.2d 15 (Antoinette S.), which concluded that it is not, disagreeing with language in cases reaching a contrary conclusion. The Antoinette S. court noted language in In re Desiree F. (2000) 83 Cal.App.4th 460, 474, 99 Cal. Rptr.2d 688: "`[S]tate courts have no jurisdiction to proceed with dependency proceedings involving a possible Indian child until a period of at least 10 days after the receipt of [notice as required by the ICWA].'" (Antoinette S., supra, at p. 1409, 129 Cal.Rptr.2d 15.) Two other California cases, In re Jonathan D. (2001) 92 Cal.App.4th 105, 110, 111 Cal.Rptr.2d 628 and In re Samuel P. (2002) 99 Cal.App.4th 1259, 1267, 121 Cal.Rptr.2d 820, have quoted this language from In re Desiree F.
Antoinette S. reviewed the California constitutional and statutory provisions granting the juvenile court original jurisdiction in dependency proceedings. It concluded that the statements in the cases to the effect that the juvenile courts had no jurisdiction when the notice provisions *595 of the ICWA are not met "appear[ ] to have been simply a shorthand way of saying the ICWA violations under consideration in those cases constituted serious legal error. Indeed, the statements regarding `no jurisdiction' are only dicta. In each case, the reviewing court reversed or remanded because the lack of notice was prejudicial error  any additional language regarding `jurisdiction' was mere surplusage. [Citations.]" (Antoinette S., supra, 104 Cal.App.4th at p. 1410, 129 Cal. Rptr.2d 15.) The court in Antoinette S. concluded that violation of the notice required by the ICWA is not jurisdictional error, observing that to hold otherwise would deprive the juvenile court of all authority over the dependent child, requiring the immediate return of the child to the parents whose fitness was in doubt. (Id. at pp. 1410-1411, 129 Cal.Rptr.2d 15.)
Applying this legal reasoning and following the majority of the cases, the only order which would be subject to reversal for failure to give notice would be an order terminating parental rights. (See, e.g., In re Nikki R. (2003) 106 Cal.App.4th 844, 855-856, 131 Cal.Rptr.2d 256.) No such order exists in these proceedings. Accordingly, all jurisdictional and dispositional orders, including the order from which Bridget appeals, remain in effect.
We note that in In re Louis S., supra, 117 Cal.App.4th 622, 12 Cal.Rptr.3d 110, the court reversed an order entered at the 12-month review hearing terminating the mother's reunification services and all subsequent orders for failure to comply with the ICWA's notice requirements. (Id. at p. 634, 12 Cal.Rptr.3d 110.) While In re Louis S. cited In re Desiree F., supra, 83 Cal.App.4th at pages 475-478, 99 Cal. Rptr.2d 688 in support of its order, it did not engage in any discussion of reversible error or even mention Antoinette S. and the analysis we adopt herein. We therefore decline to follow it in this regard.
The lack of statutory notice nonetheless requires a limited remand to the juvenile court for the Department to comply with the notice requirements of the ICWA, with directions to the juvenile court depending on the outcome of such notice. If, after proper notice is given under the ICWA, Brooke is determined not to be an Indian child and the ICWA does not apply, prior defective notice becomes harmless error. (Antoinette S., supra, 104 Cal.App.4th at pp. 1413-1414, 129 Cal.Rptr.2d 15.) In this event, no basis exists to attack a prior order because of failure to comply with the ICWA. Moreover, reversal of the order denying reunification rights on the ground of inadequate notice under the ICWA would not be in Brooke's best interests if she is not an Indian child. Alternatively, after proper notice under the ICWA, if Brooke is determined to be an Indian child and the ICWA applies to these proceedings, Bridget can then petition the juvenile court to invalidate orders which violated title 25 United States Code sections 1911, 1912, and 1913. (25 U.S.C. § 1914; Cal. Rules of Court, rule 1439(n)(1).)

DISPOSITION
The dispositional order denying reunification services to Bridget is affirmed and the matter is remanded to the juvenile court with directions that the juvenile court shall direct the Department to comply with the notice provisions of the ICWA. After proper notice under the ICWA, if Brooke is determined to be an Indian child and the ICWA applies to these proceedings, Bridget is then entitled to petition the juvenile court to invalidate orders which violated title 25 United States Code sections 1911, 1912, and 1913. *596 (See 25 U.S.C. § 1914; Cal. Rules of Court, rule 1439(n)(1).)
We concur: DOI TODD and ASHMANN-GERST, JJ.
NOTES
[1] All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.