Filed 9/30/13  In re S.C. and D.W. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.C. and D.W., Persons Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>WILLIE W.,<br><br>     Defendant and Appellant. | A136933<br><br>(Sonoma County<br>Super. Ct. No. 3513) |

Willie W. (Father), father of S.C., born in 1995, and D.W., born in 2003, appeals from the juvenile court's post-permanent plan review findings and orders.  His sole contention on appeal is that the notice requirements of the Indian Child Welfare Act (ICWA) were not met, and that the matter must therefore be "remand[ed to] the juvenile court [with directions] to comply with the notice provisions of ICWA."  The Sonoma County Human Services Department (the Department) concedes that a "limited remand" for purposes of ICWA compliance is appropriate.  We therefore affirm the post-permanent plan findings and orders and remand the matter to the juvenile court for the limited purpose of ensuring compliance with ICWA's notice provisions.

1

### The Dependency Petition

On December 21, 2010, the Department filed a dependency petition alleging that S.C. and D.W. (together, the minors[1]) were at substantial risk due to Father's mental health issues and Mother's failure to protect them from Father's unsafe behaviors. The petition further alleged the minors were suffering, or at risk of suffering, serious emotional damage. At a December 22, 2010 detention hearing, the juvenile court found prima facie evidence supported the petition and ordered the minors detained. The juvenile court placed the minors in their maternal grandparents' care. On January 25, 2011, the petition was amended to include allegations that Father had physically assaulted S.C. and that Mother had failed to protect her. The juvenile court sustained the petition as amended and assumed jurisdiction over the minors on February 16, 2011.

At a March 16, 2011 dispositional hearing, the juvenile court ordered the continued removal of the children. Both parents waived reunification services and a plan of legal guardianship with the maternal grandparents was put into place. Letters of Guardianship issued and the matter was continued for a guardianship review every six months thereafter.

### ICWA

As to the issues related to ICWA, the maternal grandparents informed the investigating social worker on December 19, 2010, that Father's Indian heritage was Blackfoot and Pomo of the Potter Valley band, and that Father's maternal grandmother was "a significant elder in that band." "On [Mother's] side," the maternal grandparents stated that the maternal grandfather's maternal grandmother "was full blood Cherokee," but that she "was adopted away from the tribe" and there were no documents to prove her heritage. At the December 22, 2010 detention hearing, Mother informed the court that the maternal great-grandmother was Cherokee, but that she did not know whether she had "left the tribe and got married to [the] grandfather, or if she was adopted and then married

---

[1] Although S.C. has now reached the age of majority, we will refer to her and D.W. as "the minors," for ease of reference.

[the] grandfather." Mother stated at the hearing that her father's grandmother was full-blooded Indian. Father stated he had a Native American grandmother, uncles, and aunt, and that his children were members of a tribe. The social worker stated that the Potter Valley tribe was noticed of the detention hearing by fax and phone. Mother filed an ICWA form indicating she might have Choctaw heritage. Father filed an ICWA form indicating heritage through the Potter Valley band of Pomo Indians.

On January 6, 2011, the Department filed a response from the Potter Valley tribe stating the minors were neither members nor eligible for membership with their tribe. The Department also sent notices to the Blackfeet tribe and the Bureau of Indian Affairs (BIA) with information regarding Father's tribal lineage. At the March 16, 2011 dispositional hearing, the juvenile court found there was insufficient information to determine if the minors may be Indian children.

At a September 15, 2011 review hearing, the Department filed letters from the BIA and reported receiving a letter from the Blackfoot tribe stating the minors were not Indian children. Father's counsel clarified that Father claimed heritage through the Pomo tribe of Potter Valley and requested that notice be sent to that tribe. Counsel also stated that Father's confusion about his tribal connection might be due to issues related to his medication.

At a March 15, 2012 guardianship review hearing, Father produced an enrollment card from the Potter Valley Tribal Council dated January 13, 1991. Father requested the court find that ICWA applies. The Department requested a continuance as to the ICWA issue, which the juvenile court granted.

On April 5, 2012, the juvenile court held a hearing on the issue of ICWA applicability. The court officer reported that the Department had attempted to contact the Pomo Potter Valley tribe and had not received a response. Father's counsel informed the Department that the Potter Valley band had been disbanded and that the inquiry should be directed to the BIA and not to the local agency.

At a September 13, 2012 review hearing, counsel for the Department reported that the social worker had noticed the BIA. It appears the Department did not receive a

3

response, as counsel noted that "a non-response from the BIA is deemed a negative response" and asked the juvenile court to find that ICWA does not apply. The juvenile court found ICWA does not apply, and Father filed a timely notice of appeal.

## DISCUSSION

ICWA was enacted in 1978 to address the "rising concern . . . over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." (*Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32.) It grants an Indian tribe exclusive jurisdiction over custody proceedings involving an Indian child who resides or is domiciled within a reservation (25 U.S.C. § 1911(a)), and the right to intervene in a state custody proceeding involving an Indian child (25 U.S.C. § 1911(c)).

The notice provisions of ICWA state, in part: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).) Strict notice requirements are a fundamental component of ICWA. (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.) When a social services agency has reason to know that an Indian child maybe involved in a dependency proceeding, notice of the proceeding must be provided to the child's potential tribe or to the BIA if tribal affiliation is unknown. (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 702-703; 25 U.S.C. § 1912(a).) In providing the notice, "[i]t is essential to provide the Indian tribe with all available information about the child's ancestors, especially the ones with the alleged Indian heritage." (*In re Francisco W.*, *supra*, 139 Cal.App.4th at p. 703.) Notice must include, if known, the names of the child's grandparents and great-grandparents, including maiden, married and former names or aliases, as well as their birth dates, places of birth and death, tribal enrollment

4

numbers, current and former addresses, and other identifying information. (25 C.F.R. § 23.11(a) & (d)(3); 25 U.S.C. § 1952.)

"The burden is on the [Department] to obtain all possible information about the minor's potential Indian background and provide that information to the relevant tribe or, if the tribe is unknown, to the BIA." (*In re Louis S.* (2004) 117 Cal.App.4th 622, 630.) Notice is meaningless if it fails to provide information that may assist the tribes and the BIA in making a determination as to the minors' Indian status. (*In re D.T.* (2003) 113 Cal.App.4th 1449, 1455.)

Father contends the Department's notice efforts were inadequate for the following reasons: (1) it did not send ICWA notices to the Cherokee or Choctaw tribes; (2) the ICWA notice that was sent to the Pomo tribe is not contained in the record, "leaving any response to the notice meaningless because there is no proof of proper notice"; and (3) the ICWA notices that were mailed to the Blackfeet tribe and BIA did not contain complete information regarding the minors' Indian relatives and Father's enrollment number.

Although the Department takes issue with some of the facts as presented by Father, it concedes that a "limited remand" to ensure ICWA compliance is appropriate. First, as to the issue of lack of notice to the Cherokee and Choctaw tribes, the Department states, "Although [the] maternal grandparents told the investigating social worker that [M]other had Cherokee heritage . . . [M]other only listed Choctaw on her ICWA [form] at the detention hearing" and "never mentioned Cherokee heritage . . . . On limited remand, additional inquiry may be made of [M]other as to Cherokee heritage and included in the re-noticing of the tribes (if applicable) as well as complete information about her family tree." Second, the Department acknowledges that the ICWA notice form and the certified mailing receipt to the Pomo tribe are not contained in the record. Finally, the Department asserts that to the extent the ICWA notices to the Blackfeet tribe and BIA did not contain certain information, "[t]he absence of these details may be remedied on limited remand."

Accordingly, we conclude that a limited remand is necessary in this case to ensure compliance with the notice provisions of ICWA. (See *In re Brooke C.* (2005) 127 Cal.App.4th 377, 384-386 [orders other than the termination of parental rights may be affirmed despite the lack of ICWA notice, and the matter may simply be remanded to the juvenile court with directions to comply with the notice requirements of ICWA].)[2]

## DISPOSITION

The post-permanent plan findings and orders are affirmed and the matter is remanded with directions that the juvenile court shall direct the Department to comply with the notice provisions of ICWA.

_____
McGuiness, P. J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.

_____

[2] The Department argues the appeal is moot as to S.C. because she is now 18 years old, and a remand for the purpose of ICWA compliance will therefore "not result in any effectual relief as to her." The Department has filed a motion to augment the record with information purportedly showing that S.C. "is now a non minor dependent." Father responds that the implications of ICWA's provisions "extend far beyond the first 18 years of a child's life" because "Indian status is not severed when a child reaches age 18," and S.C. may "still be eligible for membership in a tribe [and to receive] the benefits that arise from being a member." We decline to address the Department's argument and deny its motion to augment. If the parties wish to address the issue of how compliance with ICWA's provisions affects a "non minor dependent," they shall do so in the first instance in the juvenile court.