Filed 11/22/13  In re Craig C. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re CRAIG C., a Person Coming Under the Juvenile Court Law. | B246686 (Los Angeles County Super. Ct. No. CK83771) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. S.C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court for Los Angeles County, Elizabeth Kim, Referee.  Affirmed and remanded.

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

In this juvenile dependency case, S.C. (mother) appeals from the juvenile court's order denying her Welfare and Institutions Code[1] section 388 petition seeking to change an order providing mother with enhancement services only with respect to her son, Craig C., Jr. (Craig). Mother contends that the juvenile court abused its discretion in denying her petition, and that it failed to comply with the Indian Child Welfare Act (ICWA). We find no abuse of discretion but, as the Los Angeles County Department of Children and Family Services (the Department) concedes, the juvenile court did not comply with ICWA. Accordingly, we affirm the order denying the petition and direct the juvenile court, upon remand, to make a determination regarding whether ICWA applies based upon an appropriate investigation by the Department and notice, if necessary, to the relevant tribe and/or the Bureau of Indian Affairs.

## BACKGROUND

Craig originally came to the attention of the Department in April 2009, when he was two and a half years old. It was reported that mother left Craig unsupervised multiple times, drove with Craig in the car without a car seat, and hit and cursed at Craig. The allegations were closed as inconclusive because mother failed to make herself available to the Department for further investigation. Six months later, mother called in a referral herself, saying that she could no longer care for and supervise her son. A voluntary family maintenance (VFM) case was opened, and mother received nine months of VFM services.

In August 2010, a month after the VFM services ended, the Department received another referral alleging general neglect after mother left Craig alone and unsupervised at the transitional housing facility where she was staying. Craig was

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

detained, and the juvenile court sustained a petition alleging, under section 300, subdivision (b), that mother had left him home alone without adult supervision on at least two occasions, endangering his physical and emotional health and safety.

At the time of Craig's detention, the whereabouts of his father, Craig C., Sr. (father) were unknown. The Department located father shortly before the disposition hearing. Father was in Florida, and did not know that Craig had been detained. Father stated that he was ready, willing, and able to provide for Craig and bring him into his home.

At the disposition hearing held on October 12, 2010, the juvenile court ordered mother to attend a parent education program, individual counseling to address mental health issues, and anger management. The court also ordered that mother's visits with Craig be monitored, and did not give the Department discretion to liberalize.

In January 2011, mother filed a section 388 petition, asking the court to modify the visitation order to allow unmonitored visitation. In its response to the petition, the Department expressed concerns that mother had not yet secured stable housing, had unaddressed mental health issues, and had an inappropriate parenting style. The Department reported that mother's therapist stated that mother had not made substantial progress in her therapeutic sessions, and that she repeatedly cancelled sessions at the last minute and was currently refusing services. The Department also reported that, during visits, mother appeared to lack the necessary skills to properly parent a child, and that her relationship with Craig resembled a sibling relationship rather than a parent-child relationship. In contrast, the Department noted that father (who had moved to California to reunite with his son) acted appropriately during his visits with Craig.

At the hearing on mother's petition in February 2011, the juvenile court denied the petition, but gave the Department discretion to liberalize mother's

3

visitation upon verification that mother's mental health issues were being addressed. The court also ordered Craig placed with father under the Department's supervision.

Two months later, the Department reported that mother was only partially compliant with her case plan. Although she completed a parent education program and participated in services for four months, including individual counseling and anger management, she had not participated in services for the past month and a half. The Department also reported that mother was inappropriate during her monitored visits with Craig. The juvenile court ordered that mother be provided with referrals only for enhancement services.

By the time of the next review hearing, in October 2011, father had become homeless and had not yet participated in court-ordered services or enrolled Craig in kindergarten (because he had not taken Craig for a medical exam). Mother had moved out of the State, into a domestic violence shelter, and did not intend to return to California. The Department arranged for mother to have monitored phone visitation with Craig. In its report filed for the review hearing, the Department noted that in the 13 months since Craig was detained, mother had been inconsistent in her participation in services and was currently not participating at all. Therefore, the Department recommended that services be terminated.

The review hearing was continued twice. In the meantime, the Department learned that, due to his work schedule and lack of a car, father could not pick up Craig from daycare every day, so he had arranged for a friend to care for Craig from Tuesday mornings until Saturday mornings. Father also failed to follow through on Craig's dental and medical appointments, did not keep his appointments with the social worker, and had not yet participated in any court-ordered services. Concerned that father was not meeting Craig's needs, the Department removed Craig from father's custody and filed a section 342

4

subsequent petition alleging two counts against father under section 300, subdivision (b). Craig was ordered detained in shelter care, and the allegations of the section 342 petition were sustained.

In May 2012, mother filed another section 388 petition. The petition stated that mother had enrolled in services at the Neighborhood Place of Kona in Hawaii. Mother asked the court to change the order limiting her to enhancement services, and to order family reunification services and daily phone contact with Craig.[2] At the time the petition was filed, mother had just reconnected with Craig by telephone after having had no contact for more than a year; during that time she had had only sporadic telephone contact with the Department. The juvenile court denied the petition without a hearing.

Two months later, mother filed another section 388 petition, this time asking the juvenile court to order that Craig be placed with her or, in the alternative, that she be given six months of reunification services and that ICPC proceedings be initiated on her home in Hawaii. The petition stated that mother had completed a parenting class in Hawaii, was enrolled in counseling, and had maintained consistent phone visitation with her son in accordance with the schedule set by the court. The juvenile court denied the petition on the grounds that it did not state new evidence or a change in circumstances, the proposed change did not promote the best interest of the child, and mother failed to show that she was participating in individual counseling or anger management as ordered by the court.

Over the next several months, mother continued to have monitored phone visitation with Craig twice a week, for 15 minutes a session. Craig's foster mother, who was the monitor for the calls, reported, however, that mother frequently talked

---

[2]     Mother attached to her petition a letter from Neighborhood Place of Kona stating that mother enrolled in a parenting class that was scheduled to begin in a few weeks.

about issues she had been told not to talk about, and that Craig would act out after the calls.

In September 2012, mother filed another section 388 petition -- the petition at issue in this appeal -- once again seeking an order that Craig be placed with her or, in the alternative, that she be given six months of reunification services and that ICPC proceedings be initiated on her home in Hawaii. In support of her request, mother provided evidence that she had completed a parenting class in Hawaii and was currently enrolled in counseling that included anger management. The juvenile court ordered a hearing on the petition.

A few days before the hearing, the social worker spoke with mother's therapist in Hawaii. The therapist said that the last session mother had with her was seven weeks earlier (the day before mother filed the petition), and that mother told her at that time that she no longer would attend any sessions because she was moving back to California to get custody of her son.

The juvenile court denied the petition. In addition, after counsel for the Department and counsel for Craig expressed concern about mother's phone calls with Craig, noting that the calls appeared to be disturbing him, the court ordered that mother no longer have telephone contact with Craig. The court ordered that mother could have only monitored visitation with him in a therapeutic setting. The court stated it would allow mother to send letters to Craig via the social worker and/or Craig's counsel, who would be allowed to read the letters and determine whether they had objections to allowing Craig to have them.

Mother timely filed a notice of appeal from the denial of her petition.

## DISCUSSION

A.    *Denial of Section 388 Petition*

Mother contends the juvenile court abused its discretion by denying her section 388 petition.  We disagree.

"Section 388 permits a parent to petition the court on the basis of a change of circumstances or new evidence for a hearing to change, modify or set aside a previous order in the dependency.  The parent bears the burden of showing both a change of circumstance exists and that the proposed change is in the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)  "Whether a previously made order should be modified rests within the dependency court's discretion, and its determination will not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1704.)  Mother fails to show an abuse of discretion here.

Mother argues she established a clear change of circumstances because she provided evidence that she had completed a parenting class in Hawaii, she had maintained consistent phone visitation with her son in accordance with the court-ordered schedule, and she enrolled in counseling in compliance with the court's orders.  She also argues that the proposed change -- i.e., ordering that Craig be placed in her custody -- would promote Craig's best interest because there were no prospective adoptive parents for him, and it would give him an opportunity to reunite and have permanency with his parent.  But the Department presented evidence that mother terminated her counseling sessions the day before she filed the petition, and that mother's phone visits were disturbing to and caused behavioral problems in Craig.  Thus, mother's evidence of changed circumstances was in large part negated, and her assertion that placement of Craig with her would promote his best interest was contrary to the facts before the juvenile court.  In

7

light of this record, we conclude the juvenile court did not abuse its discretion by denying mother's petition.

B.    *ICWA Error*

Under ICWA, if the juvenile court in a dependency case knows or has reason to know that a child may be an Indian child, notice of the pending proceeding must be sent to the appropriate tribes or the Bureau of Indian Affairs. (25 U.S.C. § 1912.)  Rule 5.481 of the California Rules of Court states in relevant part that the court has "reason to know the child is an Indian child" if "a person having an interest in the child . . . provides information suggesting that the child is an Indian child."  (Cal. Rules of Court, rule 5.481(a)(5)(A).)  In this case, both parents provided information suggesting that Craig may be an Indian child.

At the time of Craig's initial detention, mother indicated that she had Indian heritage.  Mother's cousin, Renee H., who attended the detention hearing, told the juvenile court that their great-great-great-grandmother was Cherokee.  Renee stated that her 87 year old mother was the only living sibling who knew the family background, and Renee agreed to ask her mother for more information about the Indian relative.  Renee later reported to the Department that her mother told her that her great-great-grandfather was Caucasian and her great-great-grandmother was Black; they would have to take a DNA test to determine if there was any Indian heritage.

At the disposition hearing, counsel for father (who was not present) stated that she had asked father about possible Indian heritage, and father indicated that he may have Cherokee heritage.  The juvenile court stated:  "All right.  I'll order that at this time the Department or the court has no reason to know that the child would be found to be a child as described by the Indian Child Welfare Act. However, the Department is ordered to contact the party claiming possible

8

American Indian heritage and investigate that claim. The social worker is to provide to the court a supplemental report regarding that investigation. Said report should include the details of who was interviewed, days and places of birth of the relatives as far back as can be ascertained. [¶] The court will then determine whether that information triggers notice requirements."

The record does not contain any evidence that any such investigation was conducted.

Mother contends the juvenile court failed to comply with the inquiry and notice provisions of ICWA, and therefore the orders removing Craig from mother's custody and terminating her services must be reversed and the matter remanded for compliance with ICWA. The Department concedes that the ICWA requirements were not satisfied, but contends the error does not require invalidation of the prior findings and orders of the juvenile court. Instead, the Department argues that failure to comply ICWA is not jurisdictional (citing *In re Brooke C.* (2005) 127 Cal.App.4th 377, 384-385), and the matter may simply be remanded for the purpose of further ICWA inquiry and notice. We agree with the Department and the court in *In re Brooke C.* that the lack of ICWA notice is not jurisdictional. (But see *Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779.) Therefore, we will remand the matter with directions to the juvenile court to order the Department to conduct further inquiry regarding possible Indian heritage and to comply with ICWA notice requirements, if necessary.

## DISPOSITION

The order denying mother's section 388 petition is affirmed. We remand for the limited purpose of requiring the Department to comply with the ICWA inquiry and, if necessary, notice requirements. Once those requirements are met, the juvenile court shall make a determination as to whether ICWA applies.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.


We concur:



MANELLA, J.



SUZUKAWA, J.


10