Filed 2/11/14  In re Joshua J. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JOSHUA J. et al., Persons Coming Under the Juvenile Court Law. | B247513 |
| _____ | (Los Angeles County |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Super. Ct. No. CK38073) |
| Plaintiff and Respondent, | |
| v. | |
| STEPHANIE S., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite Downing, Judge  Affirmed and remanded with directions.

Lori A Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

Stephanie S. (mother) challenges the juvenile court's orders at the six-month review hearing. The juvenile court held that return of mother's children, J. J., Ju. J., and Joshua J., to mother's custody would create a substantial risk of detriment to them based on evidence that mother was allowing Justin J. (father) unmonitored access to the children in violation of court orders. Mother contends that substantial evidence did not support this order. Mother also appeals the court's order changing mother's visits from unmonitored to monitored, and the court's failure to ensure that notice was served on the Blackfoot Tribe pursuant to the Indian Child Welfare Act (ICWA). We agree only that the Department of Children and Family Services (Department) failed to comply with ICWA notice requirements, and remand for the limited purpose of allowing the juvenile court to ensure that such notice is properly provided. In all other respects, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Mother and father have three children together: seven-year-old J., nine-year-old Ju., and 11-year-old Joshua. On January 11, 2012, the Department received a referral alleging that the children were victims of physical abuse by both parents.[1] The

---

[1] Mother also had a prior court case involving three of her other children based on her use of inappropriate discipline, her abuse of marijuana, and domestic violence between mother and the father of those children. Mother failed to reunify with those children and her parental rights were terminated. In addition, with respect to J., Ju. and Joshua, there have been 11 prior referrals to the Department alleging neglect and abuse. Ten of those referrals were determined to be inconclusive or unfounded, however, a referral made on September 25, 2008 alleging that Joshua and J. were the victims of general neglect was "substantiated." As a result, mother and father participated in "family preservation" services and therapy for six months between 2008 and 2009.

reporting party said that Ju. claimed her parents used belts and clothes hangers to punish her and her siblings.

Later that day, a Department social worker interviewed the children. Seven-year-old J. stated that mother hit her with a belt when she said bad words, and that father threw a shoe that hit her in the face when she would not eat a banana. J. further said that she witnessed father hit mother " 'really hard,' " and that her parents smoked "brown things that she called cancer bars." Likewise, nine-year-old Ju. said that mother hit her, father threw a shoe at her that hit her, and father hit mother. She further stated that her parents smoked marijuana and that she felt safer around the social worker than her family.

Eleven-year-old Joshua denied that there was physical abuse in the home. When the social worker asked Joshua if he or his siblings were ever hit, he said " 'not really.' " He further said that he was only spanked when he was in really bad trouble, father only chased the children with a belt but did not hit them, mother only used a hanger to warn them, and he had not seen father hit mother. He also denied that his parents smoked marijuana. However, when the social worker spoke with Joshua's therapist, the therapist reported that the parents had a long history of domestic violence. She also said that there was marijuana use in the home, and that mother did not give Joshua his psychotropic medication on a regular basis.

Ju. suffered hallucinations when she was talking with the social worker, and was admitted to a psychiatric facility the following day. A week later, the Department received a second referral based on statements by Ju. that she and her siblings had been

3

locked in the bathroom previously, and had been left alone at home at night. Ju. also said she had once attempted to hang herself.

The social worker interviewed J. and Joshua about the referral allegations. J. said that the children had been locked in the bathroom for approximately 30 minutes when the adults were drinking beer and having a party. She also said that mother hit her when she was bad, such as when she jumped on the bed, and that she had been hit with a belt by her parents. She told the social worker a second time about the incident when her father threw a shoe at her that hit her in the face. She also said that her parents fight all the time and hit each other.

Joshua denied that the children had ever been locked in the bathroom or that he had ever been left home alone at night. The social worker noted that Joshua "appeared to be concerned about making any statements that would disrupt his family." However, when asked about his medication regimen, Joshua said that he did not take his medication every day because mother forgot or they did not have enough.

A petition was filed on January 31, 2012, alleging that mother and father had physically abused the children, among other allegations. The court detained the children. Father appeared at the hearing and reported that he might have American Indian heritage from the Blackfoot Tribe. The court ordered the Department to provide notice to the Bureau of Indian Affairs, Department of Interior, and the Blackfoot Tribe. The Department did not do so.

In the Jurisdiction/Disposition Report, J. and Ju. recanted many of their previous statements. J. said that mother and father never argued but only "sa[id] good stuff." She

4

denied that she had ever been struck with an object, reported that she was never spanked, and said "[n]obody does drugs." However, she acknowledged that her aunt had "punched Joshua," but then asked the interviewer to cross out that statement because "my mommy will be mad . . . I said that because our family only does good things." Juniya also said that her parents never argued, and that they did not do drugs. In addition, she denied that she had been hit or spanked by mother.

On February 7, 2012, father was convicted of a misdemeanor count of inflicting corporal injury on a "Spouse/Cohabitant." At the jurisdictional hearing on April 11, 2012, the court sustained allegations that mother inappropriately disciplined the children, that father failed to protect them, that mother abused marijuana, and that both parents neglected to ensure that Joshua regularly took his medication.[2] The court dismissed the domestic violence count on the grounds that the occurrence of violence was "too remote in time." At the dispositional hearing on April 30, 2012, the court ordered mother and father to complete a substance abuse program, and to participate in individual counseling to address issues of substance abuse, domestic violence, and appropriate parenting. The court further ordered father to take a parenting class and noted that mother had already completed such a class. The court further gave the

---

[2]     The court also sustained allegations that father had a history of substance abuse and was a current abuser of marijuana. Father appealed from this count and argued that there was insufficient evidence to support the trial court's finding that he had a substance abuse problem. (*In re Joshua J.* (B241205; filed on January 4, 2013) [nonpub. opn.].) We agreed and reversed as to this particular jurisdictional finding. (*Ibid.*)

5

Department discretion to release the children to mother and granted both parents visitation "to be monitored by [a] DCFS approved monitor."

In a Interim Review Report filed on August 6, 2012, the Department reported that mother was making progress in therapy, and that all of mother's random drug tests were negative. However, mother's counselor reported that mother had "express[ed] or [] implied that she is in [im]minent danger with father . . . ." The social worker told mother that "[i]f the unmonitored visits were approved she would have to agree to not allow the father to have contact with the children at anytime and she would need to be proactive in protecting her children. So if father showed up to her home or at the visit, she would need to call the police or obtain a restraining order if she felt threatened in any way." Mother agreed to those conditions and said she had not been in a relationship with father for over a year.

On September 14, 2012, mother again reported to the social worker that she and father were living separate lives and did not interact. The children also said that they had not had a visit with father " 'for a long time,' " and that they liked visiting with mother. The Department reported that mother was consistently on time and played with the children, and that it had liberalized mother's visits to unmonitored, to include overnight and weekend visits.

However, at the next progress hearing, the court noted that the Department was concerned that mother "has been less than candid about the relationship with [father]." Mother's counsel stated that "mother denies that [father] has been around the children[,] [b]ut even if he was, this court has not made any order that mother is not to monitor his

visits. . . . " The court responded that "[mother] is not in a position to monitor anybody's visits . . . we need to be really clear about that." Mother indicated that she understood this.

On September 25, 2012, Ju. and J. told a social worker that father had been present during unmonitored visits. Mother denied this. The following month, the Department informed the court that mother was expecting another child by father, and that mother had misrepresented to the social worker that father was not responsible for her pregnancy.

In November 2012, Joshua told his therapist that father visited regularly when the children were visiting mother, and that mother told him to lie "all the time" so that they could come home to live with her. J. also told a social worker that " 'my mom tells me to say no to anything you ask me because I won't get to go home.' " Mother denied these allegations.

In December 2012, J. and Joshua's foster mother reported that the children said father had been present at mother's house the previous weekend. J. had told her foster mother that "they did not have a good weekend because her father got mad," and "[i]mmediately, Joshua[,] who overheard her comment . . . explained that [d]ad was mad at mom because she was talking, but they worked it out and everything is fine."

In advance of the six-month review hearing, the Department recommended to the court that the children remain in their current foster homes and filed a Welfare and

Institutions Code³ section 388⁴ petition requesting that mother's visits be changed from unmonitored to monitored.  At the  contested hearing  on December 19, 2012, the court found that return of the children to mother's physical custody would be detrimental to them and granted the section 388 petition.  Mother timely appealed.

### *CONTENTIONS*

Mother contends that (1) there was no substantial evidence supporting the court's conclusion that returning the children to mother at the six-month review hearing would create a substantial risk of detriment to them; (2) the court abused its discretion by changing her visits from unmonitored to monitored; and (3) the Department failed to provide notice as required by ICWA.

### *DISCUSSION*

1.      *Standard of Review*

At the six-month review hearing, the juvenile court's finding that returning a child to parental custody poses a risk of detriment is reviewed as to whether there is substantial evidence supporting it.  (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1483.) "In so doing, we consider the evidence favorably to the prevailing party and resolve all conflicts in support of the trial court's order.  [Citation.]  'Substantial evidence' means evidence that is reasonable, credible and of solid value; it must actually be substantial

---

**³**      All further statutory references are to the Welfare and Institutions Code.

**⁴**      Section 388 provides, "[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . . "

8

proof of the essentials that the law requires in a particular case. [Citation.]" (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1401.)

With respect to a section 388 petition, we review the juvenile court's decisions for an abuse of discretion. (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

2.      *There Was Substantial Evidence Supporting the Court's Conclusion*
        *That Returning the Children to Mother's Custody Would Create*
        *A Substantial Risk of Detriment to Them*

Section 366.21, subdivision (e) governs the six-month review hearing and provides that "the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The social worker shall have the burden of establishing that detriment."

Mother contends that the court did not make the factual findings necessary to support its order that return of the children to her care would be detrimental. Mother is correct that, pursuant to section 366.21, subdivision (e), "the court shall specify the factual basis for its conclusion that the return would be detrimental," and that, here, the court failed to do so with respect to this decision. However, any error in failing to make

9

express factual findings was harmless, as explained below. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218.)

Although mother participated in the classes and counseling ordered by the court, and had positive visits with her children, there was substantial evidence that mother was not taking the steps necessary to protect the children from father's violent tendencies. At the outset of the case, J. and Ju. both stated that father hit mother, and that father threw shoes at them. In addition, Joshua's therapist reported that there was domestic violence in the home. Soon after the petition was filed, father was convicted of a misdemeanor count of domestic violence. During the course of this case, mother represented to her counselor that father posed an imminent danger to her. Despite this disclosure and the court's order that father was only permitted to visit with the children under the supervision of a Department-approved monitor, there was evidence that mother allowed father to visit with the children without a monitor present. Against the backdrop of father's history of violence, evidence that mother was allowing father unmonitored access to the children constituted substantial evidence that return of the children to mother's care at that time would create a substantial risk of detriment to them.

Mother argues that the court should not have considered the presence of domestic violence in the home because there were no sustained allegations of domestic violence in the petition. However, although mother suggests that the court's review under section 366.21, subdivision (e), was limited to issues covered by its jurisdictional findings, "nothing in section[] 366.21 . . . requires that the detriment which justifies

continued removal of the minor from parental custody must be akin to the detriment which necessitated juvenile court jurisdiction." (*In re Joseph B.* (1996) 42 Cal.App.4th 890, 899.) "[T]he question whether to return a child to parental custody is dictated by the well-being of the child at the time of the review hearing; if returning the child will create a substantial risk of detriment to his or her physical or emotional well-being [citations], placement must continue regardless of whether that detriment mirrors the harm which had required the child's removal from parental custody [citation]." (*Id.* at p. 900.)

Mother also argues that the Department did not meet its burden at the six-month review hearing because it never established that a Department-approved monitor was not present when father was visiting the children with mother. However, it was reasonable for the court to infer that father's visits were not monitored based on evidence that (1) mother never claimed that an approved monitor was present but denied that father had ever showed up during her visits with the children, and (2) mother told the children to lie about their father's visits.

3.    *The Juvenile Court Did Not Abuse Its Discretion When It*
      *Granted the Department's Section 388 Petition*

Mother contends that the court abused its discretion by granting the Department's section 388 petition and ordering that mother's visits be changed from unmonitored to monitored. At a hearing on a section 388 petition, "[t]he petitioning party has the burden of showing, by a preponderance of the evidence, that (1) there is a change of circumstances or new evidence; and (2) the proposed change in the court's

11

previous order is in the child's best interests. [Citations.]" (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1071.) Here, both prongs were satisfied.

Mother argues that there was no "change of circumstances" because the court's "basic premise" that mother was threatened by father was erroneous as there was "no evidence . . . that Mother ha[d] ever been 'in danger' or 'threatened' [by] Father." In fact, there was such evidence: (1) at the outset of the case, J. and Ju. had said that father hit mother, and Joshua's therapist reported that there was domestic violence in the home; (2) father was convicted for domestic violence during the course of this case; and (3) mother represented to her counselor that father presented an imminent danger to her. Contrary to mother's contention, this evidence indicated that father presented a threat to her. Moreover, this evidence, combined with evidence that mother was allowing father unmonitored access to the children, supported the court's conclusion that mother had failed to protect the children from father during visits, and thus, unmonitored visits were no longer appropriate.

Mother also argues that changing mother's visits to monitored was not in the children's best interests because the children needed extended time with her and suffered as a result of being away from her. Even if this were true, the evidence also showed that mother placed these children at risk by exposing them to father without an approved monitor present. Within the context of mother's disclosure that she felt father placed her in imminent danger, father's recent conviction for domestic violence, and the children's statements that they had previously seen father hit mother, the evidence that mother was allowing father unmonitored access to the children was sufficient to support

12

the court's conclusion that it was no longer in the children's best interests to have unmonitored visits with mother.

4.      *The Notice Requirements of ICWA Were Not Satisfied*

Mother contends that the Department failed to provide required notice under ICWA, and the Department concedes the point.  The juvenile court is required to inquire about a child's Indian status in all dependency proceedings.  (*In re W.B., Jr.* (2012) 55 Cal.4th 30, 52-53.)  "Once the court has learned that a child under its jurisdiction *may* have Indian ancestry, the next step ICWA typically requires is notice to the tribe, or if no tribe is identified, to the [Bureau of Indian Affairs.]"  (*Id.* at p. 53.)

Here, father informed the court that he may have Indian ancestry through the Blackfoot Tribe, and the court ordered the Department to notice the tribe.  The Department failed to do so, and the parties now agree that a limited remand is necessary with directions to the juvenile court to ensure that ICWA's requirements are satisfied. That is the proper remedy here.  (See *In re Brooke C.* (2005) 127 Cal.App.4th 377, 385 [holding that orders other than the termination of parental rights may be affirmed despite lack of ICWA notice, and the matter remanded only for the purpose of allowing the juvenile court to ensure compliance with the notice requirements]; but see *Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779 [disagreeing with *In re Brooke C.* and holding that "when there has been a lack of ICWA notice, the juvenile court's orders must be vacated because they are based on different standards than should have been applied if ICWA notice was provided and showed the child is an Indian child."  (*Id.* at p. 781.)])

13

If, after proper notice is given under ICWA, "neither the tribe nor the Bureau of Indian Affairs has provided a determinative response within 60 days after receiving that notice, then the court may determine that the [ICWA] does not apply to the proceedings, provided that the court must reverse its determination of the inapplicability of the act and must apply it prospectively if the tribe or the Bureau of Indian Affairs subsequently confirms that the child is an Indian child." (Cal. Rules of Court, rule 5.482, subd. (d)(1).)  In the alternative, if it is determined that the children *are* Indian children and that ICWA applies to these proceedings, either the children or the parents can petition the dependency court to invalidate any prior order which violated ICWA. (Cal. Rules of Court, rule 5.486, subd. (a); *In re Brooke C., supra,* 127 Cal.App.4th at pp. 385-386.)

### *DISPOSITION*

The six-month review hearing orders are affirmed and the matter is remanded for the limited purpose of directing the juvenile court to order the Department to comply with the notice provisions of ICWA. If, after proper notice, a tribe claims that Joshua, J. and Ju. are Indian children, the juvenile court shall proceed in conformity with ICWA, and the children or their parents may petition the trial court to invalidate any orders that violated ICWA. If, on the other hand, no tribe makes such claim, prior defective notice becomes harmless error.

*NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

CROSKEY, Acting P. J.

WE CONCUR:

KITCHING , J.

ALDRICH, J.

15