Filed 2/10/15  In re Elijah C. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ELIJAH C. et al., Persons Coming Under the Juvenile Court Law. | B254463 (Los Angeles County Super. Ct. No. CK92381) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CECILIA B.,<br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Stephen C. Marpet, Juvenile Court Referee.  The portion of the appeal pertaining to the disposition order is dismissed.  The jurisdictional order is affirmed.  The matter is remanded to juvenile court with directions.

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

_____

Cecilia B. (mother) appeals from the jurisdiction order declaring her children Elijah C. (Elijah) and Cherish B. (Cherish) (collectively minors) to be dependents of the juvenile court, and the disposition order removing the minors from her custody. Mother contends that neither order is supported by substantial evidence. As to Cherish, mother contends that the matter must be remanded for compliance with the requirements of the Indian Child Welfare Act (ICWA).

The disposition order is moot due to subsequent custody orders. The portion of mother's appeal related to the disposition order is dismissed.

The jurisdiction order is affirmed as to both Elijah and Cherish. However, as to Cherish, the Department of Children and Family Services (Department) concedes that it failed to comply with the ICWA and investigate whether Cherish has Indian heritage through the Cherokee or Crow tribes. Thus, as to Cherish, the matter is remanded for the Department to investigate whether Cherish has Indian heritage and, if appropriate, to provide the notice required by the ICWA.

## FACTS

*The minors*

Elijah was born in 2008. His father is Shannon C. (father). Cherish was born in 2010. Her father is George B. (George).

*2012 dependency proceeding regarding Elijah*

On March 5, 2012, the Department filed a petition regarding Elijah under Welfare and Institutions Code section 300, subdivisions (a) and (b).[1] Father was the offending parent. At the time, mother was incarcerated.[2] A month later, the juvenile court

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The petition is not in the appellate record. According to the detention report of October 28, 2013, a reporting party called in February 2012 and stated that father had been arrested for strangling his girlfriend several times in a hotel, and that Elijah had been present for those incidents. The Department later discovered that father tried to strangle himself by making a noose out of his T-shirt while he was in jail. He was placed in a mental institution. When mother came to pick up Elijah at the police station, she was

terminated jurisdiction with a family law order giving mother sole legal and physical custody.

*Events leading up to detention in 2013*

On April 2, 2013, the minors came to the attention of the Department after receiving a call from a clinician at a hospital who reported that the mother had been placed on a psychiatric hold after she overdosed on pills in an attempt to commit suicide. According to the clinician, mother had attempted suicide on two prior occasions, and each time had been hospitalized.

Mother tested positive for cannabis and cocaine.

At the time of the referral, mother had been residing with maternal grandmother, Alberta W. (Alberta).[3]  A social worker visited Alberta's home.  She reported that she was Cherish's primary caregiver, Elijah was living with father, and George was incarcerated.  About a week later, the social worker interviewed mother.  During that interview, mother said her life felt like it was turning upside down because she had lost her job and apartment.  She was seeing a therapist, and she was receiving mental health services as well as substance abuse counseling.  She stated that she ensured that the minors were supervised at all times.  The social worker spoke to the minors' teachers and learned that they attended school regularly, and that whenever mother dropped them off, she acted appropriately.

On July 12, 2013, mother drug tested.  The result was negative.

About a month and a half later, in August or September 2013, mother was reportedly living in a motel on a voucher.  After running out of psychotropic medication and having trouble sleeping, she drove to a service provider to replenish her medication. During the ensuing assessment, she acted erratic, leading the service provider to believe she was intoxicated.  Mother submitted to a drug test, which was positive for cocaine.

---

arrested on outstanding warrants for prostitution.  Subsequently, mother was released from jail and given custody of Elijah.

[3]      In the appellate record, Alberta is sometimes referred to as the maternal great-grandmother.

That meant she had used the drug recently. She kept trying to rush the assessment, saying that she needed to pick up the minors. The service provider gave mother a primary diagnosis of Bipolar II and a secondary diagnosis of cocaine abuse. Based on her diagnosis, she received a prescription for psychotropic medication. She asked father to take care of the minors until the cocaine was out of her system.

When a social worker spoke to mother via telephone, she said that she did not have a place to live and was looking for a homeless shelter. Alberta reported that mother had been living in Alberta's home with the minors but had left a few days before. Mother returned to Alberta's home, and the social worker spoke to her. She promised to stay at Alberta's house and submit to a drug test. Alberta agreed to supervise the minors.

At a team decision meeting on September 24, 2013, mother drug tested. The result was negative. She agreed to continue seeing a psychiatrist and submit to random drug testing. A few days later, the Department received notice that mother was participating in various support groups at a clinic, and had been diagnosed with a panic disorder. A few weeks later, mother consented to the removal of the minors from her custody. Until mother completed her programs, the plan was for Elijah to remain in father's care, and for Cherish to be in the joint care of Alberta and Cherish's paternal grandmother, Denise B. (Denise).

A social worker inspected father's home. Later, the social worker discovered that father had an extensive criminal history—including a conviction for lewd and lascivious acts with a child under 14 years of age—and had a history of drug abuse and domestic violence. Father consented to Elijah's removal and his placement in the care of Alberta pending further investigation.

*The section 300 petition*

The Department filed a petition pursuant to section 300, subdivision (b) alleging that mother and father were unable to supervise and care for the minors. As to mother, it was alleged she had a history of drug abuse, cocaine use, and mental and emotional problems. Regarding father, it was alleged that he was a registered sex offender who had convictions for lewd or lascivious acts with a child under 14 years of age, possession of a

4

controlled substance, and battery on a spouse. The petition alleged that neither of the minors had known Indian ancestry.

*The detention hearing*

At the detention hearing, mother and father each executed a Parental Notification of Indian Status form and denied Indian heritage.

Denise was present at the hearing. She informed the juvenile court that her family had Indian ancestry through the Cherokee and Crow tribes, but her parents were not "on the roll." The juvenile court ordered the Department to interview Denise further and "walk" the matter on if it appeared that notice to the tribes was appropriate.[4]

The juvenile court detained the minors and placed them with Alberta. Family reunification services were ordered. Mother was given unmonitored visits on the condition she submit to weekly, random drug tests and not have any missed or positive tests.

Mother was a no show for drug tests on November 7, 2013, November 18, 2013, December 2, 2013, and December 16, 2013. Other drug tests were negative.

*Jurisdiction and disposition hearing*

The parties convened for a hearing on January 6, 2014. Elijah was five years old and Cherish was three years old.

The juvenile court admitted into evidence the Department's detention report with all attachments, the jurisdiction/disposition report and all attachments, a January 6, 2014 last minute information report with all attachments, a report from a multidisciplinary assessment team, and all minute orders in the case. The parties did not call any witnesses.

The petition was sustained.

The juvenile court found by clear and convincing evidence there was a substantial danger to the minors' physical and mental well-being if they remained in mother's custody. The minors were placed with Alberta. Mother was authorized to live in

---

[4] The parties agree that there is no indication in the record that the juvenile court or Department ever followed up regarding Denise's contention.

Alberta's home and have unmonitored contact with the minors. However, mother was advised that if she missed a drug test, or tested positive, then she would be ordered out of Alberta's home.

Mother was ordered to attend and complete a drug and alcohol program with weekly, random testing. In addition, she was ordered to attend and complete an "aftercare" program with Alcoholics Anonymous, attend individual counseling designed to address the issues in the case, follow-up with a mental health assessment, and take all medications prescribed by a therapist.

This timely appeal followed.

*Subsequent Events*

On April 7, 2014, the minors were released to mother's custody on the condition that she continue to submit to weekly random tests for drugs and alcohol, and that her tests come back negative. Soon after, the juvenile court clarified that it had issued a home of parent order. Several months later, the Department filed a section 387 petition stating that mother was under the influence of illicit drugs on May 22, 2014, while the minors were in her care. According to the petition, the use of illicit drugs endangered the minors' safety. The juvenile court detained the minors. The Department was instructed to provide mother with family reunification services. On July 7, 2014, the petition was amended and sustained, and the home of parent order was terminated. The minors were placed in the care of the Department for suitable placement. On August 26, 2014, Elijah was placed in father's home, and Cherish was placed in George's home. The Department was ordered to supervise.

Mother filed a notice of appeal from the juvenile court's adjudication and disposition of the section 387 petition.

## STANDARD OF REVIEW

When reviewing a juvenile court's jurisdiction and disposition orders in a dependency case, we apply the substantial evidence test. "Under this standard '[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable

6

inferences from the evidence to uphold the court's orders, if possible.' [Citations.]" (*In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.)

## DISCUSSION

### I. Jurisdiction Order Supported by Substantial Evidence.

Mother contends that there was insufficient evidence that her drug use and mental health placed the minors at substantial risk of harm. We disagree.[5]

Section 300, subdivision (b) requires proof by a preponderance of evidence that a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse . . . ."

Case law establishes that jurisdiction under this subdivision requires evidence of "'three elements: (1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.'" (*In re David M.* (2005) 134 Cal.App.4th 822, 829.) The Department has the burden of proving by a preponderance of the evidence that a child is a dependent. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

When children are "six years old or younger at the time of the jurisdiction hearing. . . [,] 'the finding of substance abuse is prima facie evidence of the inability of a

---

[5]      Father did not appeal the jurisdiction finding against him. Thus, jurisdiction as to Elijah is not subject to challenge. (*In re P.A.* (2007) 155 Cal.App.4th 1197, 1212 ["a child may be declared a dependent if the actions of either parent bring the child within the statutory definitions of dependency"].) Nonetheless, we review the jurisdiction findings as to mother because the finding resulted in the removal of Elijah from her custody. (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 ["We will not reverse for error unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result"].)

7

parent or guardian to provide regular care resulting in a substantial risk of harm'
[citation]." (*In re Christopher R.* (2014 ) 225 Cal.App.4th 1210, 1219.)

The evidence showed that mother had a history of mental illness, three suicide attempts, two hospitalizations and substance abuse. In September 2013, she was acting erratically when being assessed for psychotropic medication, and the service provider believed that mother was under the influence of a substance. She tested positive for cocaine. Despite having drugs in her system, she had been driving and was planning to pick up the minors, giving rise to the inference that she was willing to place the minors at serious risk of harm. She asked father to take the minors until the cocaine was out of her system. Later, she agreed that Alberta would supervise the minors. Then mother agreed to the removal of the minors from her custody, signaling she understood that she was incapable of providing them with adequate care. It was agreed that Eljiah would stay in father's custody, and that Alberta and Denise would have joint custody of Cherish until mother completed her programs. Subsequently, mother had four no shows for random drug tests, the inference being that mother was using drugs on those occasions and wanted to avoid detection.

Based on the unique facts of this case—including mother's instability due to mental illness and substance abuse, her willingness to drive the minor with drugs in her system, and the young age of the minors (ages five years old & three years old at the time of the jurisdiction hearing)—we conclude that substantial evidence supports the juvenile court's risk of harm finding.

## II. Disposition Order Moot.

Following mother's appeal of the January 6, 2014, disposition order removing the minors from her custody, the juvenile court entered a subsequent order placing the minors in mother's custody. According to the Department, mother's challenge to the January 6, 2014, disposition order is moot. We agree.

Normally, an appellate court deems an appeal moot when no effective relief can be granted. (*In re Jessica. K.* (2000) 79 Cal.App.4th 1313, 1315–1316.) However, "a reviewing court may exercise its inherent discretion to resolve an issue rendered moot by

8

subsequent events . . . ." (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1404.)  "We decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether our decision would affect the outcome in a subsequent proceeding." (*Ibid.*)

In the event that the July 7, 2014, and August 26, 2014, orders are reversed, the case will go back to the status quo, which is placement of the minor's with mother.  Thus, reversing the January 6, 2014, disposition order would serve no purpose.  Under these circumstances, that order is moot.

## III.  The ICWA.

Mother contends that the Department failed to investigate Cherish's potential Indian heritage through the Cherokee and Crow tribes and determine if notice was required under the ICWA.  The Department concedes.

We follow the rule that when there is a failure to follow the ICWA procedures before disposition, all jurisdiction and disposition orders remain in effect and the matter is remanded "for the Department to comply with the notice requirements of the ICWA, with directions to the juvenile court depending on the outcome of such notice.  If, after proper notice is given under the ICWA, [the minor] is determined not to be an Indian child and the ICWA does not apply, prior defective notice becomes harmless error. . . .  Alternatively, after proper notice under the ICWA, if [the minor] is determined to be an Indian child and the ICWA applies to these proceedings, [a party] can then petition the juvenile court to invalidate orders" that violate the ICWA.  (*In re Brooke C.* (2005) 127 Cal.App.4th 377, 385.)

## DISPOSITION

The portion of the appeal pertaining to disposition order is dismissed. The jurisdiction order is affirmed. Regarding Cherish, the matter is remanded for the juvenile court to order the Department to comply with the inquiry and notice provisions of the ICWA. If, after proper notice is given, the juvenile court determines that Cherish is an Indian child and the ICWA applies, Cherish or her parents may petition the juvenile court to invalidate any orders that violate the ICWA.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
             ASHMANN-GERST


We concur:


_____, P. J.
      BOREN


_____, J.
      CHAVEZ

10