Filed 1/28/16  R.F. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| R.F.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SONOMA COUNTY,<br><br>        Respondent;<br><br>SONOMA COUNTY HUMAN SERVICES DEPARTMENT,<br><br>        Real Party in Interest. | A146187<br><br>(Sonoma County<br>Super. Ct. Nos. 3632-DEP, 3633-DEP, 3634-DEP, 4628-DEP) |

**MEMORANDUM OPINION[1]**

The four children of petitioner R.F. (Mother), A.G., 13 years old, G.G., 11 years old, A.F., four years old, and K.G., 17 months old, were the subjects of amended dependency petitions, filed August 31, 2015.  The petitions alleged Mother was unable to protect or supervise the children, was involved in substance abuse, had failed to meet the children's basic needs, and had exposed them to serious domestic violence.  (Welf. & Inst. Code,[2] § 300, subd. (b).)  Following a contested jurisdictional hearing, the children were found to be dependents of the court, and reunification services to Mother were

---

[1] We resolve this case by a memorandum opinion pursuant to California Standards of Judicial Administration, section 8.1(1), (3).

[2] All statutory references are to the Welfare and Institutions Code.

denied under section 361.5, subdivision (b)(13) (hereafter section 361.5(b)(13)).[3]  A permanency planning hearing under section 366.26 was scheduled for January 7, 2016.

On October 27, 2015, Mother filed a petition for an extraordinary writ in this court, seeking an order directing the juvenile court to return the children to her or, alternatively, vacate its order denying reunification services and scheduling a section 366.26 hearing.  Mother contends the juvenile court's jurisdictional finding that she was involved in substance abuse, the court's dispositional order removing the children, and its denial of reunification services were not supported by substantial evidence.  She also contends the juvenile court abused its discretion in concluding the denial of reunification services was in the children's best interests.  By order of November 24, 2015, we stayed the permanency planning hearing pending ruling in this matter.

The factual circumstances underlying Mother's claims of error are known to the parties and are summarized in the "Opposition and Response to Mother's Petition for Extraordinary Writ," filed by the Sonoma County Human Services Department (Agency).

***Mother's Substance Abuse***

Initially, we note that Mother's petition does not present a cognizable challenge to the juvenile court's assertion of jurisdiction.  She challenges only the jurisdictional findings concerning her substance abuse, while conceding the evidentiary support for the allegations of a filthy home and exposure to domestic violence.  Accordingly, the juvenile court did not err in asserting jurisdiction.  (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491–1492 [jurisdiction established so long as one ground for jurisdiction is supported by substantial evidence].)

We nonetheless exercise our discretion to address Mother's challenge to the court's finding of substance abuse because it is relevant to the court's denial of reunification services and its dispositional order.  (See *In re M.W.* (2015)

---

[3] Rulings were also made with respect to the children's fathers, but the fathers are not parties to this writ proceeding.

2

238 Cal.App.4th 1444, 1452.) In order to support jurisdiction under section 300, subdivision (b), a parent's substance abuse must create a substantial risk of serious harm to the child. (*Id.*, subd. (b)(1); *In re Alexis E.* (2009) 171 Cal.App.4th 438, 452.) We affirm jurisdictional findings if they are supported by substantial evidence. (*In re James R.* (2009) 176 Cal.App.4th 129, 134–135.)

The court's conclusion that Mother was engaged in substance abuse that posed a risk of harm to the children was supported by substantial evidence. The children were found in a filthy, unkempt home, and they reported to the Agency that the two older children were often left in charge of the care of the two younger children while Mother retreated to her bedroom with men to drink. Often, the man accompanying her was the father of the two younger children, Guadalupe G. Mother acknowledged such drinking, as well as her use of marijuana. It was common for Mother's bedroom sessions with Guadalupe G. to devolve into an argument, during which he sometimes became violent towards Mother and "mean" towards the children. At these times, the children retreated to their room to avoid the violence. The juvenile court was permitted to infer that Mother's drinking was a significant contributor to the chaotic condition of the home, her failure to care for the children, and the arguments that led to domestic violence. The foregoing was sufficient to support the court's jurisdictional finding, since the exposure to a filthy home and uncontrolled violence posed both a physical and emotional risk to the children.

Mother argues there was no evidence she had relapsed into methamphetamine use, her drug of choice earlier in life, or was otherwise abusing illegal drugs, but there is no requirement of illegal drug use to support a finding of harmful substance abuse. (*In re Samkirtana S.* (1990) 222 Cal.App.3d 1475, 1487–1488, disapproved on other grounds in *In re Horton* (1991) 54 Cal.3d 82, 92–93.) In any event, substantial evidence supports Mother's methamphetamine use. Guadalupe G., a frequent presence in Mother's home, acknowledged using methamphetamine. When the children were initially detained, Mother admitted to a police officer that she was using methamphetamine. She later denied such use, but her behavior on first contact with the Agency was consistent with

3

methamphetamine use.  Further, when initially drug-tested, Mother was found to have opiates in her system, and she evaded drug testing for the following two months.  The juvenile court could properly conclude from this evidence that Mother was abusing illegal drugs.

***The Children's Removal***

Under section 361, subdivision (c)(1), a dependent child cannot be taken from the physical custody of his or her parents unless the juvenile court finds clear and convincing evidence of "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor . . . ."  " 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child.' "  (*In re J.S.* (2014) 228 Cal.App.4th 1483, 1492 (*J.S.*).)

Although the juvenile court must find danger to the children by clear and convincing evidence, " '[w]e review the court's dispositional findings for substantial evidence.  [Citations.]'  [Citation.] . . . '[T]he "clear and convincing" standard is for the edification and guidance of the juvenile court.  It is not a standard for appellate review.' "  (*J.S., supra,* 228 Cal.App.4th at pp. 1492–1493.)

The evidence discussed above provides substantial evidence to support the juvenile court's decision to remove the children from the home.  As discussed, Mother engaged in repeated substance abuse while neglecting the children's well-being and causing them to be subjected to serious domestic violence.  There is little question she created a "substantial danger" to the well-being of her children.

Nor are we persuaded there were reasonable alternatives to removal.  Mother argues the children could have been left with her while she was provided substance abuse and domestic violence services.  This was not, however, Mother's first bout with self-destructive substance abuse.  In 2005, 2007, and 2010, she was arrested for substance-abuse-related crimes.  In 2011, the three older children were removed from her care when they were found in circumstances similar to those prevailing when the children were

detained in 2015.  Following the 2011 proceedings, Mother planned to stay sober and exercise better judgment in her relations with men.  Yet she had resumed regular substance abuse by the time the children were detained in 2015.  Further, although Mother was plainly aware of the relationship between her substance abuse and the endangerment of her children, she did little or nothing to get help in the months following the 2015 detention, despite a referral from the Agency for substance abuse treatment, and she rarely visited the children.  Based on this history, the juvenile court could readily have concluded that return to Mother and the provision of services would not have assured the children's safety.

*Denial of Reunification Services*

Section 361.5, subdivision (b) contains 16 exceptions, referred to as "bypass provisions," to the general rule requiring a parent to be provided reunification services prior to the scheduling of a section 366.26 hearing.  (*In re G.L.* (2014) 222 Cal.App.4th 1153, 1163 (*G.L.*).)  Under one of the bypass provisions, section 361.5(b)(13), reunification services can be denied to a parent when, as relevant here, "the court finds, by clear and convincing evidence, . . . [¶] . . . [¶] . . . [t]hat the parent or guardian of the child has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention . . . ."  We review a juvenile court's decision to bypass services under section 361.5, subdivision (b), for substantial evidence.  (*G.L.,* at p. 1164.)

Bypass under section 361.5(b)(13) requires both a history of chronic drug abuse and resistance to a court-ordered drug treatment program during the three years prior to the filing of the dependency petition.  (*In re Brian M.* (2000) 82 Cal.App.4th 1398, 1403.)  "The definition [of resisting treatment] encompasses both active and passive behavior.  Thus, a parent can actively resist treatment for drug or alcohol abuse by refusing to attend a program or by declining to participate once there.  The parent also can passively resist by participating in treatment but nonetheless continuing to abuse drugs or alcohol, thus demonstrating an inability to use the skills and behaviors taught in

5

the program to maintain a sober life. In either case, a parent has demonstrated a resistance to eliminating the chronic use of drugs or alcohol which led to the need for juvenile court intervention to protect the parent's child." (*Karen S. v. Superior Court* (1999) 69 Cal.App.4th 1006, 1010.) "[P]roof [of resistance to treatment] may come in the form of dropping out of programs, but it may also come in the form of resumption of regular drug use after a period of sobriety." (*Laura B. v. Superior Court* (1998) 68 Cal.App.4th 776, 780.) Such a resumption, however, must be a return "to consistent, habitual . . . substance abuse," rather than a mere "setback" or "brief relapse." (*Ibid.*; see *In re William B.* (2008) 163 Cal.App.4th 1220, 1230 [drug use occurring at least every other week not a "simple relapse" but a "resumption of drug use" demonstrating a resistance to treatment]; *In re Brooke C.* (2005) 127 Cal.App.4th 377, 383 [similar].)

We have no hesitation in finding substantial evidence to support the conclusion Mother had engaged in chronic substance abuse. She began using marijuana and alcohol at the age of 12. Between August 2005 and April 2010, she was arrested four times for possession of drugs or drug paraphernalia, and in 2011, the children were detained in part because of neglect due to Mother's methamphetamine abuse.

There is also substantial evidence to support a finding Mother had resisted court-ordered drug treatment. Mother first attended a court-ordered treatment program in 2006, after her 2005 arrest, and had "moderate success." She presumably had resumed drug use by 2007, when she was twice arrested for drug-related offenses. In 2012, Mother participated in a drug treatment program in connection with the 2011 dependency proceeding.[4] Although she completed the program successfully, by 2015, she had resumed regular drug abuse. One of the children told the Agency the problems began a "few months" earlier, demonstrating a resumption of habitual drug abuse. Under the

_____

[4] Although the record does not contain any of the court orders from the earlier proceeding, the juvenile court could properly conclude that Mother's participation in the drug treatment program was ordered by the court as part of her reunification plan. This would constitute "court-ordered" drug treatment for purposes of section 361.5(b)(13). (*In re William B., supra,* 163 Cal.4th at pp. 1229–1230.)

decisions cited above, her resumption of such drug abuse, following participation in two court-ordered treatment programs, provided substantial evidence to support a finding of resistance to treatment under section 361.5(b)(13).

Mother contends there was no evidence of resistance to treatment within the three-year period prior to filing of the dependency proceeding because her last "documented" use of methamphetamine occurred in 2011, and her use of alcohol "was not proven." For the reasons discussed above, both contentions are without merit. Mother admitted to both methamphetamine and alcohol abuse in 2015, and the children's testimony about her recent episodes of drug use, combined with the condition of her home and the violence inflicted by Guadalupe G., suggests her drug use was consistent, habitual, and self-destructive. The juvenile court's conclusion that Mother had resisted court-ordered treatment was supported by substantial evidence.[5]

### *The Children's Best Interests*

If the juvenile court concludes that a parent satisfies the requirements of section 361.5(b)(13), reunification services cannot be granted "unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c), 2d par.; *In re L.S.* (2014) 230 Cal.App.4th 1183, 1193.) "In determining the children's best interests, the 'court should consider "a parent's current efforts and fitness as well as the parent's history"; "[t]he gravity of the problem that led to the dependency"; the strength of the bonds between the child and the parent and between the child and the caretaker; and "the child's need for stability and continuity." ' [Citation.] '[A]t least part of the best interest analysis must be a finding that further reunification services have a likelihood of success. In other words, there must be some "reasonable basis to conclude" that reunification is possible before services are offered to a parent who need not be provided them.' " (*G.L., supra,* 222 Cal.App.4th at p. 1164.)

---

[5] Mother also argues "there is no bypass for domestic violence cases." While this proceeding featured domestic violence, the court's decision to bypass was based on Mother's chronic drug abuse, not on the occurrence of domestic violence.

7

We review a determination of best interests under section 361.5, subdivision (c) for abuse of discretion. (*G.L.,* at pp. 1164–1165.)

Mother contends that the juvenile court's failure to find reunification in the children's best interests was an abuse of discretion because the children may be separated from each other in the foster care system and will not be raised by their natural parent. While it is unfortunate the siblings may be separated, that factor alone is not determinative of their best interests. None of the children was shown to be unusually emotionally dependent on his or her relationship with Mother, and all of them were traumatized by the experience of living with her over the prior months. While Mother might be able to complete another reunification program successfully, her history of repeated regression into drug abuse created a substantial risk that reuniting the children with her would again, at some point, result in their exposure to the chaos, neglect, and violence found at the time of their detention. The juvenile court did not abuse its discretion in concluding their need for stability and continuity of care would not be served by reunification with Mother.

Mother's petition for an extraordinary writ is denied on the merits, and the stay of the juvenile court's section 366.26 hearing is lifted. (See *Kowis v. Howard* (1992) 3 Cal.4th 888, 894.) The decision is final in this court immediately. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

_____
Margulies, Acting P.J.

We concur:


_____
Dondero, J.


_____
Banke, J.


A146187
*R.F. v. Superior Court*

9